not be operated at a profit that it could not be arranged to supply the municipality by parties other than the city.

By 109 OS. 440, it was held that a municipal corporation acting in a proprietary capacity could exercise its powers as would a private corporation.

A municipality may enter into a reasonable contract whereby it leases its equipment requiring the lessee to furnish gas at a reasonable rate to the inhabitants of the municipality."

---

No. 482

IN RE FEES OF TOWNSHIP TREASURER

No. 2633.  Decided July 1, 1925

315.  FEES—Under 3316 GC. a township treasurer could draw his compensation until a depository was established; even after January 1, 1924, when the office of township treasurer was abolished by the aforementioned statute.

The Bureau of Inspection and Supervision of Public Offices requested an opinion upon the following: "Can a township treasurer legally be paid 2% on disbursements made by his township during January, 1924, for the reason that a new depository was not provided for the township moneys as authorized by Sec. 3316-1 GC. until one month after the office of township treasurer was abolished by the taking effect of House Bill No. 43 on January 1, 1925?"

To which statement of facts, the Attorney General replied:

Sec. 3320 GC. as amended by the act specifically required township trustees to provide a county depository.  It would therefore be presumed that trustees had complied with the law which would argue that the legislature did not contemplate that such depository would have to be established after Jan. 1, 1924 when the act became effective.

In Sec. 3316-1 GC. the language used is "when a depository has been provided the township trustees shall dispense with the treasurer," which conveys the idea that the legislature had in mind instances wherein no depository had been established.

It is the opinion of the department of the Attorney General that the treasurer could legally draw his compensation until his services were terminated.  In this the services did not legally terminate until the depository was established.

# FEDERAL OPINIONS
No. 483
LIMA (City) v. FARLEY
U. S. Appeals, 6th Circuit
No. 4253.  Decided June 8, 1925

125.  WARRANTY—Where a contractor, relying on representations and statements made by a city, regarding the composition of soil through which a sewer is to be built, enters into a contract to build such sewer, he has a right to rely on such representations and statements, and if such representations were made in bad faith, there is a breach of warranty.

MOORMAN, C. J.

John W. Farley entered into a contract with the city of Lima to build a sewer in said city for the sum of $528,000.  He had submitted a bid for this amount based upon representations of the city that it had caused borings to be made to determine the composition of the subsoil through which such sewer should be run.

These representations appeared upon a profile map, but on specifications attached to said map appeared the words "the profiles are reasonably correct, but are not guaranteed to be absolutely so."

Statements regarding the character of the subsoil were made by the agents of the city to Farley to the effect that the character of such soil as shown by the blueprints was correct.

Farley entered into this contract believing and relying on the statements of the city, and after entering into the work found that the statements and representations were false and untrue; that the subsoil consisted of quicksand and other substances, which required difficult and expensive work much in excess of what was contemplated, had the soil been as represented.

Judgment was recovered against the city by Farley in the amount of $124,598, in the District Court.  The city prosecuted error, alleging that it did not warrant the character of the subsoil by such representations.  The Circuit Court of Appeals held:

1.  While the city did not guarantee the absolute accuracy of the profiles, or the result of the boring as shown thereon, it did state as facts that the borings were actually made, and that the profiles were "reasonably correct."

2.  There was an implied warranty of the verity of these statements.

3.  If as alleged, they were wilfull misrepresentations and Farley relied upon them, there was a breach of warranty.

Judgment affirmed.

Attorneys—Paul T. Landis and J. J. Weadock for Lima; J. Henry Goeke and Wheeler & Bentley for Farley; all of Lima.